IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Carl Rosenow, ) | Civil Action No. 9:10-cv-1592-RMG |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| ) | |
| CareCore National, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this action, Plaintiff alleges that Defendant, Plaintiff's former employer, terminated him due to his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a). Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.02(b)(2)(g) DSC, this matter was automatically referred to the United States Magistrate Judge for pretrial proceedings. On January 24, 2012, Defendant filed a motion for summary judgment. (Dkt. No. 25). After Plaintiff filed a response and Defendant filed a reply, the Magistrate Judge held oral argument on Defendant's motion. On April 24, 2012, the Magistrate Judge issued a Report and Recommendation recommending that Defendant's motion for summary judgment be granted and that this case be dismissed. (Dkt. No. 37). On May 11, 2012, Plaintiff filed objections to the Report and Recommendation. (Dkt. No. 39). For the reasons explained herein, the Court agrees with the findings and conclusions in the Report and Recommendation, grants Defendant's motion for summary judgment, and dismisses this action with prejudice.

**I.    Factual Background**

Defendant is a specialty benefit management company that manages the quality and use of various medical services and treatments affecting more than 30 million people. *See* CareCore

1

National website, http://www.carecorenational.com/about/about-us.aspx (last visited May 15, 2012). In July of 2006, Defendant purchased a Beechjet 400 (the "jet"), which is "a small jet, twin engine, corporate in nature, seven seats or thereabouts, different configurations, principally used for charter or for small company operations, typically carrying four or five passengers." (Dkt. No. 25-2 at 6). After Defendant purchased the jet, a pilot named Todd Fox brought the jet from its pre-buy inspection to Defendant's CEO, Don Ryan.[1] (Dkt. No. 25-3 at 3). At the time of purchase, the jet was based in Poughkeepsie, New York, where Mr. Ryan was living, and the jet was managed by a third party management service, Richmor Aviation. At the time of purchase, Mr. Fox was employed by Richmor Aviation as the captain of the jet, and another individual was employed as the co-pilot of the jet. (*Id.* at 3-4; Dkt. No. 25-2 at 5). Mr. Fox continued to be employed as the lone captain of the jet from the time the jet was purchased through the fall of 2007. (Dkt. No. 25-3 at 3-4).

In the fall of 2007, Mr. Ryan decided to move to Hilton Head, South Carolina and to relocate the jet to Hilton Head as well. (Dkt. No. 25-2 at 3). Mr. Fox originally did not want to move to Hilton Head, as would be required for him to continue in his position with Richmor. As a result, Richmor hired Plaintiff as the new captain of the jet in October of 2007. (*Id.*). Although Plaintiff has been qualified to serve as a captain of certain types of aircrafts since 1969 (Dkt. No. 29-2 at 6), Plaintiff had never flown a Beechjet 400 and was not type rated to serve as a captain of that type of aircraft at the time he was hired by Richmor. (Dkt. No. 25-2 at 6, 10). Upon Plaintiff being hired by Richmor, Mr. Fox trained Plaintiff to be type rated to serve as a captain of the jet. (*Id.* at 10; Dkt. No. 25-3 at 8-10). Richmor paid Plaintiff a salary of approximately $75,000 per year to be the captain of the jet. (Dkt. No. 25-2 at 12). Around

---

[1] On September 17, 2011, Mr. Ryan passed away without ever being deposed in this lawsuit.

December of 2007, Mr. Fox changed his mind and decided that he would like to move to Hilton Head and continue flying the jet for Richmor. (*Id.* at 4; Dkt. No. 25-3 at 11-13). As a result, Richmor hired Mr. Fox to serve as a captain of the jet along with Plaintiff.

In January of 2008, Mr. Ryan approached both Plaintiff and Mr. Fox and asked them if it would be feasible to remove the jet from Richmor's management and to establish an independent flight department within Defendant. (Dkt. No. 25-2 at 7-8). Plaintiff and Mr. Fox agreed that Mr. Ryan's proposal was feasible, and Plaintiff, Mr. Fox, and Mr. Ryan met on at least two occasions to discuss the new employment arrangement, including Plaintiff's and Mr. Fox's salary and benefits. (*Id.* at 13-15). During these meetings, Mr. Ryan, Mr. Fox, and Plaintiff agreed that both Plaintiff and Mr. Fox would have the title of "pilot" and that they would both earn a $100,000 per year base salary. (*Id.* at 9; 13-15). Based on these discussions, Defendant terminated its contract with Richmor on February 1, 2008, and simultaneously hired Plaintiff and Mr. Fox pursuant to the terms agreed upon. Plaintiff, who was born on June 30, 1949 (Dkt. No. 1 at 2), was 58 years old at the time he was hired by Defendant. Plaintiff testified that, at the time he and Mr. Fox were hired by Defendant, he and Mr. Fox were to be equals:

> Q: Do you have an understanding as to whether or not that was Todd's decision, your decision, if you and Todd had any chain of command going up to Don Ryan with regard to what your salary was?
>
> A: There was no chain of command, we were peers at the moment. In the conversation with Don Ryan, I was quite clear that I felt it should remain that way, that is, we are peers, we both work for Don, I don't work for Todd, Todd doesn't work for me, and Don Ryan agreed to that.

(Dkt. No. 25-2 at 13).

Plaintiff and Mr. Fox remained employed by Defendant as co-pilots from February 1, 2008, through July of 2009, each making $100,000 per year. During this time period, Plaintiff

3

and Mr. Fox would fly the jet together, with one person in the left cockpit seat and one person in the right cockpit seat. As explained in Mr. Fox's deposition:

> Q And so, when y'all would fly these legs, did you ever fly together, both you and Carl, or would it just be Carl would fly one and you would fly one?
>
> A: The airplane requires two pilots on any flight to occupy the two pilot seats up front. The left seat is usually the flying pilot is the way that we had it set up. The right seat is the person who talks on the radio. Each seat has its list of duties that we do through the normal course of the day, from the preflight of the airplane to the actual flight to the postflight and putting the airplane away at the end of the day. As co-captains that Carl and I were, we completely shared those seats; meaning, that we would rotate them between days. One day, he would fly left seat and take care of all those associated duties and I would do the opposite, and then vice versa on the next day.
>
> Q So would that mean like, say, Monday, Carl is the pilot and you're the copilot, and then, Tuesday, you're the pilot and Carl is the copilot?
>
> A: Correct. Not to forget that we were both captains, we were co-captains, which is what we agreed on. But as far as swapping duties and who was hands-on flying the airplane sitting in the left seat, yes, we would swap those from day to day.

(Dkt. No. 25-3 at 20).

On July 9, 2009, Plaintiff received a phone call from Defendant's Senior Vice President of Human Resources, Janet Galloway. (Dkt. No. 25-2 at 17). Plaintiff told Ms. Galloway that he could not talk and to please call him back the next day. On July 10, 2009, Ms. Galloway called Plaintiff back and informed him that Defendant no longer needed two captains on the jet and that his services were no longer needed. (*Id.*). Plaintiff requested to meet with Mr. Ryan to discuss his termination, and Plaintiff met with Mr. Ryan on July 13, 2009.[2] Plaintiff testified that, during this meeting, Mr. Ryan told him that he had looked at the costs and usage of the jet and that he

---

[2] The record is unclear as to the date when Plaintiff met with Mr. Ryan regarding his termination. Plaintiff contends that the meeting occurred on July 13, 2009, and Defendant contends that the meeting occurred on July 20, 2009. An email between an administrative assistant with Defendant and Ms. Galloway indicates that the meeting occurred on July 20, 2009. (Dkt. No. 31-4 at 2). However, for purposes of this motion, the Court assumes that the meeting occurred on July 13, 2009.

could not justify paying two captains. (*Id.* at 18, 21). Plaintiff testified that Mr. Ryan said it was a business decision to terminate him, and Plaintiff concedes that Mr. Ryan did not indicate that Plaintiff's performance or age had anything to do with the decision. (*Id.*). Plaintiff also testified that Mr. Ryan apologized that Plaintiff's termination was so poorly handled. (*Id.* at 18). Plaintiff testified that Mr. Ryan told Plaintiff during the meeting that he was keeping Mr. Fox as captain instead of Plaintiff based on the fact that Mr. Fox had been with Defendant longer than Plaintiff. (*Id.* at 29). Plaintiff testified that, during this meeting, he indicated to Mr. Ryan that he would have taken a lower paying position in order to avoid unemployment. (*Id.* at 18, 27-28). Plaintiff had recently turned 60 years old at the time he was terminated by Defendant.

The day before Ms. Galloway called Plaintiff regarding his termination, Ms. Galloway sent a letter to Mr. Miroslaw Hudak offering him a position as co-pilot of the jet at a salary of $50,000 per year. (Dkt. No. 25-12). The letter indicated that Mr. Hudak's employment would begin on July 13, 2009. (*Id.*). Mr. Hudak had previously flown for Defendant during time periods when Plaintiff was on vacation. (Dkt. No. 25-2 at 6). Mr. Hudak accepted the position with Defendant and continues to work for Defendant and receive a salary of approximately $50,000 per year. (Dkt. No. 29-1 at 4). Mr. Hudak was 29 years old at the time he was hired. (Dkt. No. 29-1 at 4).

## II.   Procedural Background

Following his termination, Plaintiff filed a charge with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC) alleging age discrimination. Plaintiff was issued a Right to Sue letter and timely filed this action. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.02(b)(2)(g) DSC, this matter was automatically referred to the United States Magistrate Judge for pretrial proceedings. On

5

January 24, 2012, Defendant filed a motion for summary judgment, arguing that 1) Plaintiff has failed to establish a prima facie case of age discrimination, and 2) even if Plaintiff has established a prima facie case of age discrimination, Defendant has offered a non-discriminatory reason for terminating Plaintiff, and Plaintiff has failed to create a genuine issue of material fact as to whether this non-discriminatory reason is merely a pretext for discrimination. (Dkt. Nos. 25 and 25-1). On February 10, 2012, Defendant filed a response, arguing that Plaintiff has established a prima facie case of age discrimination and that a genuine issue of material fact does exist as to whether Defendant's stated reason for terminating Plaintiff was a pretext for discrimination. (Dkt. No. 29). On February 21, 2012, Defendant filed a reply in support of its motion for summary judgment. (Dkt. No. 31). On March 27, 2012, Magistrate Judge Bristow Marchant held oral argument on Defendant's motion. On April 24, 2012, Magistrate Judge Marchant issued a Report and Recommendation recommending that Defendant's motion for summary judgment be granted and that this case be dismissed. (Dkt. No. 37). On May 11, 2012, Plaintiff filed objections to the Report and Recommendation. (Dkt. No. 39).

### III. Analysis

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* Where the plaintiff fails to file any specific objections, the Magistrate Judge's conclusions are reviewed

6

only for clear error, *see Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and this Court is not required to give any explanation for adopting the recommendation of the Magistrate Judge. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

### a. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### b. Applicable Law

Under a claim for age discrimination pursuant to the ADEA, "a plaintiff must prove, with reasonable probability, that but for the age of the plaintiff, the employment decision adverse to the plaintiff would not have been made. Age must have been a determining factor." *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1417 (4th Cir. 1991). A plaintiff in an age discrimination action may meet his or her burden through either direct evidence of discrimination[3] or through circumstantial evidence pursuant to the *McDonnell Douglas* framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Halperin v. Abacus Tech. Corp.*, 128

---

[3] In the case *sub judice*, it is undisputed that Plaintiff does not have any direct evidence that his age was a determining factor in Defendant's decision to terminate Plaintiff.

7

F.3d 191, 196 (4th Cir. 1997) ("Absent direct evidence of discrimination, [the plaintiff] must satisfy the three-step proof scheme established in *McDonnell Douglas* . . . to prevail on his ADA and ADEA claims."), *overruled on other grounds by Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). The Fourth Circuit has explained the *McDonnell Douglas* framework as follows:

> Under the method of proof by circumstantial evidence established by *McDonnell Douglas*, when the plaintiff proves a prima facie case of age discrimination, the burden of going forward shifts to the defendant. If the defendant articulates a legitimate nondiscriminatory reason for the employment action, the plaintiff must then prove that the reason given was a mere pretext for discrimination and that age was a more likely reason for the employment action.

*Duke*, 928 F.2d at 1417. Notwithstanding the shifting burdens in the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### c. Application of the Law to this Case

#### i. Plaintiff Has Established a Prima Facie Case.

In the case *sub judice*, the Court finds that Plaintiff has established a prima facie case of age discrimination. In order to establish a prima facie case of age discrimination, a plaintiff must show (1) he is a member of the protected class; (2) he was qualified for the job and met the employer's legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by someone substantially younger with comparable qualifications. *Causey v. Balog*, 162 F.3d 795, 802 & n.3 (4th Cir. 1998). It is undisputed that Plaintiff was a member of a protected class because he was over forty years old, that he was qualified for his job and met Defendant's expectations, and that he was discharged from his job. With regard to the fourth element, Defendant argues that Plaintiff was not *replaced* by someone substantially younger because Plaintiff's position was eliminated altogether in favor

8

of the "co-pilot" position, which entailed different duties and a 50% reduced salary. However, the Court agrees with the Magistrate Judge's finding that, considering the evidence and any reasonable inferences to be drawn from that evidence in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Plaintiff's termination occurred under circumstances giving rise to a reasonable inference of age discrimination. *Cf. Montana v. First Fed. Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 104-05 (2d Cir. 1989) (holding that the fourth element required to establish a prima facie case for age discrimination may be met under any circumstances giving rise to an inference of age discrimination, and finding the fourth element met where, after plaintiff's discharge, the majority of her responsibilities were transferred to a younger co-worker in a different department and plaintiff was not offered the opportunity to transfer to the other department). Thus, the Court finds that Plaintiff has established a prima facie case of age discrimination.

### ii. Defendant Has Articulated a Legitimate Non-Discriminatory Reason.

Next, the Court finds that Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination. To satisfy this requirement, the employer is not required to prove absence of a discriminatory motive, but merely to articulate some legitimate reason for its action. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1991). "It is simply a burden of production not of persuasion." *Id.* Further, this burden "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 1333, 142 (2000). Defendant asserts that Plaintiff was terminated because Mr. Ryan determined that it was not cost effective to keep two captains on the payroll. In his deposition, Plaintiff confirmed that this was the reason Mr. Ryan gave for terminating Plaintiff when they met shortly after Plaintiff's termination. (Dkt. No. 25-2 at 61). While Mr. Ryan passed away before being deposed in this case, Ms. Galloway has

submitted an affidavit stating that Mr. Ryan told her that he decided to terminate Plaintiff "after analyzing the usage of the corporate jet and in order to realize cost savings without jeopardizing the safe and efficient operation of the jet." (Dkt. No. 25-5 at 2).[4] This explanation is certainly logical in light of the fact that Plaintiff and Mr. Fox were both being paid a captain's salary but were alternating between captain duties and the duties of a co-pilot (also referred to as a "second-in-command"). (Dkt. No. 25-3 at 20). Defendant has also submitted evidence that Mr. Fox had more experience flying the type of aircraft at issue and had worked for Defendant for a longer period of time, and that Mr. Ryan decided to retain Mr. Fox instead of Plaintiff on this basis. (Dkt. No. 25-2 at 22, 29). Finally, Defendant has submitted evidence that Mr. Ryan did not offer the co-pilot position to Plaintiff, instead of Mr. Hudak, because Mr. Ryan did not believe Plaintiff was willing to be a subordinate of Mr. Fox or accept a 50% salary reduction. (Dkt. No. 25-5 at 2-3). Defendant's asserted non-discriminatory reason for terminating Plaintiff is sufficient to shift the burden back to Plaintiff to show that Defendant's asserted reason is a pretext for age discrimination.

### iii. Plaintiff Has Failed to Create a Genuine Issue of Material Fact as to Whether Defendant's Asserted Reason for Terminating Plaintiff was a Mere Pretext for Age Discrimination.

Where, as in this case, the defendant meets the burden of production with regard to a legitimate non-discriminatory reason for terminating the plaintiff, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th

---

[4] The Court has reviewed and agrees with the Magistrate Judge's Order holding that the Court may consider Ms. Galloway's affidavit regarding Mr. Ryan's statements to Ms. Galloway as to his reason for terminating Plaintiff. (Dkt. No. 36). As thoroughly explained in the Magistrate Judge's Order, these statements are admissible pursuant to Rule 807 of the Federal Rules of Evidence. (*Id.*).

10

Cir. 2004) (quoting *Reeves*, 530 U.S. at 142-43). "In other words, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Id.* (internal citations omitted). "At this point, the burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Id.* (internal citations omitted). In order to satisfy this burden, it is not sufficient for the plaintiff to show merely that the defendant's asserted reason is false; rather, the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515-16 (1993). Here, the Court finds that Plaintiff has failed to create a genuine issue of material fact as to whether his termination was the result of intentional discrimination.

When asked why he believed that he was terminated due to his age, Plaintiff testified as follows: "Because there was no other reason to terminate me and the conversations that had taken place with Todd Fox, who was in a position to influence decision making." (Dkt. No. 25-2 at 19). First, Plaintiff's subjective belief that there was no reason to terminate him other than his age is irrelevant for purposes of determining whether Plaintiff has met his burden, especially in light of the fact that Defendant has offered a legitimate reason for terminating Plaintiff – namely, Defendant's desire to reduce the cost of its flight department by eliminating one captain position (at a cost of $100,000 per year) and replacing it with a co-pilot position (at a cost of $50,000 per year). Second, Plaintiff references "conversations that had taken place with Todd Fox, who was in a position to influence decision making." As explained in Plaintiff's response to Defendant's motion for summary judgment, Plaintiff is referring to conversations which Plaintiff claims he had (and which the Court accepts as true for purposes of this motion) with Todd Fox regarding a change in the law which occurred in 2007. (Dkt. No. 29 at 20-22). Specifically, on December

11

13, 2007 (approximately one and a half months before Plaintiff was hired by Defendant), the Federal Aviation Administration's longstanding "Rule of 60," which prohibited pilots from flying certain commercial flights after the age of 60, was repealed and replaced with a law increasing the age to 65. *See* 49 U.S.C. § 44729; *see also* Jeff Orkin, Comment: *Fair Treatment for Experienced Pilots Act – All Good Things Really Do Come to an End!*, 73 J. Air L. & Com. 579 (2008) (discussing history of Rule of 60). Plaintiff testified that this change in the law was a common topic of discussion amongst pilots and that he had "multiple conversations over time with different crews and different pilots" about the law. (Dkt. No. 29-2 at 7-8). Plaintiff also testified that the subject came up several times when he was with Mr. Fox and that Mr. Fox commented that he was opposed to the change in the law:

> Q: Okay. What are your recollections of the discussions [Mr. Fox] had with you regarding his opinion on the change?
> A: He doesn't elaborate a great deal on it, but he did make comments that he thought it was not the right step.
> Q: And did he say why?
> A: I don't recall his specific reasons.
> Q: Just more of a blanket statement that he didn't support the change?
> A: That's my recollection.

(Dkt. No. 29-2 at 10-11).

While the Court accepts as true for purposes of this motion that Mr. Fox was opposed to the change in the law regarding the Rule of 60, this opposition does not create a genuine issue of material fact as to whether Defendant's CEO, Mr. Ryan, terminated Plaintiff based on his age. Plaintiff does not argue that Mr. Ryan held any ageist bias; rather, Plaintiff argues that Mr. Fox's opposition to the change in the law creates a genuine issue of material fact because Mr. Ryan followed Mr. Fox's recommendation in terminating Plaintiff and acted merely as the "cat's paw." (Dkt. No. 29 at 18-22). Plaintiff, however, has not produced any evidence to support this theory. In *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286-91 (4th Cir. 2004),

the Fourth Circuit discussed at length the burden on a plaintiff asserting an age discrimination claim under the ADEA pursuant to a "cat's paw" theory. The Court "decline[d] to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." *Id.* at 291. "Regarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision." *Id.*

Here, Plaintiff has not produced any evidence (1) that Mr. Fox ever communicated his feelings about the Rule of 60 (or any other negative feelings that he might have had about Plaintiff) to Mr. Ryan, or (2) that Mr. Ryan would have allowed Mr. Fox to be "the person who in reality makes the decision" about Plaintiff's termination. Plaintiff argues that certain evidence shows that Mr. Fox and Mr. Ryan met a few days before Plaintiff was terminated, and Plaintiff suggests that Mr. Fox may have used this opportunity to persuade Mr. Ryan to terminate Plaintiff because of his age. However, a party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, the only evidence which Plaintiff offers in support of his theory that Mr. Ryan would have followed the recommendation of Mr. Fox, if in fact Mr. Fox instructed Mr. Ryan to terminate Plaintiff, is the following testimony from Mr. Fox:

> Q Was [Mr. Ryan] ever willing to take either [Plaintiff's] or your suggestions about things in the aviation department?
> A: Hundred percent. As when [Plaintiff] and I sat down with him for our meeting to project our request list for the details of the job, he accepted it fully without any

13

> -- any concern about any of the line items that we had on it. There was no problem. He just accepted it and we were free and clear. He absolutely took our input and pretty much let us do what we wanted.
> Q: Was he the kind of boss or the kind of CEO, I guess, that would accept people's -- I'm sorry -- would solicit input from people?
> A: Absolutely. He was open minded, and he would sit and listen to what somebody had to say, absolutely.

(Dkt. No. 29-3 at 28-29). However, the fact that Mr. Ryan was an open-minded person and accepted *both Plaintiff's and* Mr. Fox's input regarding how to run the aviation department is insufficient to create a genuine issue of material fact as to whether Mr. Fox was the actual decisionmaker with regard to Plaintiff's termination.

Finally, the Court's decision to grant Defendant's motion for summary judgment is bolstered by the Fourth Circuit's holding in *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991). In *Proud*, the plaintiff brought an age discrimination claim after he was fired six months into his job. The Court held that "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Id.* at 797. Here, Plaintiff was fired by Mr. Ryan seventeen months after he was hired by Mr. Ryan. Seventeen months is a sufficiently short time span to create a strong inference that discrimination was not a determining factor in Mr. Ryan's decision to terminate Plaintiff. *See, e.g., Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (approving *Proud* and finding an inference that age discrimination did not motivate the plaintiff's termination where plaintiff was hired and fired by the same person within a four year time span), *reversed on other grounds*; *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992) (approving *Proud* and finding that "[i]t is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-

14

one had suddenly developed an aversion to older people less than two years later"). In *Proud*, the Court stated: "While we can imagine egregious facts from which a discharge in this context could still be proven to have been discriminatory, it is likely that the compelling nature of the inference arising from facts such as these will make cases involving this situation amenable to resolution at an early stage." *Id.* at 798. The Court finds that the case *sub judice* presents no such egregious facts.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment (Dkt. No. 25) and dismisses this case with prejudice.

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Judge

May 17, 2012
Charleston, South Carolina

15